Timothy G. Nelson
Eva Y. Chan
SKADDEN ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
(212) 735-3000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

| | |
|---|---|
| In re Application of : | |
| EVENSTAR MASTER FUND SPC for and on : behalf of | |
| EVENSTAR MASTER SUB-FUND I : SEGREGATED PORTFOLIO; and | Civ. Action No. _____ |
| EVENSTAR SPECIAL SITUATIONS : LIMITED | |
| : | |
| For an Order to Take Discovery Pursuant to 28 U.S.C. § 1782 for Use in a Foreign Proceeding : | |
| : | |

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OF LAW IN SUPPORT OF PETITION AND EX PARTE APPLICATION FOR AN ORDER TO TAKE DISCOVERY FOR <u>USE IN A FOREIGN PROCEEDING PURSUANT TO 28 U.S.C. § 1782</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ..................................................................................................1

FACTUAL BACKGROUND..........................................................................................................2

        A.      Relevant Parties and Non Parties...........................................................................2

                1.      Evenstar....................................................................................................2

                2.      Fang Holdings ..........................................................................................3

                3.      Vincent Mo ...............................................................................................3

                4.      The Proposed Subpoena Recipients..........................................................3

        B.      The Foreign Proceedings that are the Subject of this Application..........................5

                1.      Evenstar's Investment in Fang ..................................................................5

                2.      The Cayman Proceeding: Evenstar Requests that Fang Be Subject to a Just and Equitable Winding Up Order .................................................5

                3.      Allegations in the Cayman Proceeding Concerning Next Decade – and U.S. Properties ..................................................................................6

I.        LEGAL FRAMEWORK ....................................................................................................9

        A.      Section 1782 Standards...........................................................................................9

        B.      The Power of the Court to Proceed *Ex Parte*.......................................................10

II.      THE APPLICATION MEETS SECTION 1782'S STATUTORY REQUIREMENTS.............................................................................................................11

        A.      The Proposed Subpoena Recipients are "Found" Within This District .................11

        B.      The Discovery Sought is For "Use" in a Foreign Proceeding ...............................12

        C.      The Evenstar Entities are "Interested Persons"......................................................13

III.     THE SECTION 1782 DISCRETIONARY FACTORS WEIGH IN FAVOR OF PERMITTING THE PROPOSED DISCOVERY ............................................................13

CONCLUSION..............................................................................................................................16

# TABLE OF AUTHORITIES

## CASES

*In re Accent Delight International Ltd.*,
    869 F.3d 121 (2d Cir. 2017)..................................................................................................12

*In re Application for an Order Pursuant to 28 U.S.C. § 1782*,
    773 F. 3d 456 (2d Cir. 2014)..................................................................................................12

*In re Application of OOO Promnefstroy*,
    No. M-19-99(RJS), 2009 WL 3335608 (S.D.N.Y. Oct. 15, 2009)....................................14

*Australia & New Zealand Banking Group Ltd. v. APR Energy Holding Ltd.*,
    No. 17-MC00216 (VEC), 2017 WL 3841874 (S.D.N.Y. Sept. 1, 2017) ..........................11

*In re Bayer AG*,
    146 F.3d 188 (3rd Cir. 1998) ................................................................................................15

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
    673 F.3d 76 (2d Cir. 2012)..................................................................................9, 10, 12, 13

*In re Edelman*,
    295 F.3d 171 (2d Cir. 2002)..................................................................................................10

*In re Euromepa, S.A.*,
    51 F.3d 1095 (2d Cir. 1995)..................................................................................................15

*In re Fornaciari*,
    No. 17MC521, 2018 WL 679884 (S.D.N.Y. Jan. 29, 2018) .............................................11

*Gushlak v. Gushlak*,
    486 F. App'x 215 (2d. Cir. 2012) ........................................................................................10

*Intel Corp. v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004)................................................................................9, 10, 13, 14, 15

*In re Kleimar N.V.*,
    220 F. Supp. 3d 518 (S.D.N.Y. 2016)..................................................................................11

*In re Minatec Fin. S.À*,
    No. 1:08-CV-269, 2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008)....................................15

*NBC v. Bear Stearns & Co.*,
    165 F. 3d 184 (2d Cir. 1999)................................................................................................12

*In re Technostroyexport*,
    853 F. Supp. 695 (S.D.N.Y. 1994) ......................................................................................11

## STATUTES

28 U.S.C. § 1782(a) ...................................................................................................1, 9, 16

Petitioners Evenstar Master Fund SPC and Evenstar Special Situations Limited (together, "Evenstar") respectfully submit this Memorandum of Law in support of their Petition and *Ex Parte* Application pursuant to 28 U.S.C. § 1782 ("Section 1782") for an order authorizing Evenstar to obtain discovery from Ms. Jing Cao, Research Center on Natural Conservation ("RCNC"), New York Military Academy ("NYMA"), Wall Street Global Training Center ("WSGTC") and Best Work Holdings LLC ("Best Work") (collectively, the "Proposed Subpoena Recipients") for use in proceedings before a foreign or international tribunal.[1]

## PRELIMINARY STATEMENT

Evenstar seeks permission to issue subpoenas to various entities and persons in New York State and to obtain documents and testimony for use in litigation against Fang Holdings before the Grand Court of the Cayman Islands titled *Evenstar Master Sub-Fund I Segregated Portfolio et al. v. Mo et al.,* Cause No. FSD 278 of 2020(ASCJ) (the "Cayman Proceeding").

The Cayman Proceeding seeks the just and equitable winding up of Fang Holdings Limited (a Cayman company whose headquarters are in mainland China). Evenstar commenced the Cayman Proceedings on grounds that, among other things, its Chairman and CEO, Mr. Vincent Mo (who controls an effective 71% voting interest) has engaged in self-dealing, and that Mr. Mo and his management have otherwise acted to the detriment of shareholders, including Evenstar. The discovery sought by Evenstar is pertinent to these matters: in each instance, the Proposed Subpoena Recipient has engaged in, or is linked to, transactions that are specifically referenced in the Cayman Proceeding. The individual Proposed Subpoena Recipient, Ms. Jing Cao, is Mr. Mo's

---

[1] This Memorandum of Law refers to the accompanying Declarations of Fleur O'Driscoll ("O'Driscoll Decl. ¶ __") and Eva Y. Chan ("Chan Decl. ¶ __"). The five proposed subpoenas *duces tecum* and *ad testificandum* (the "Proposed Subpoenas") are attached as Exhibits 2 to 6 of the Chan Declaration.

spouse, as well as an officer of RCNC and NYMA, and a director of Next Decade Investments Limited ("Next Decade"), a privately held Mo family entity that has engaged in some of the transactions that are alleged to constitute self-dealing, and alleged to have resulted in gains of over $38 million to Next Decade and another Mo family entity. As noted below, Ms. Cao maintains a residence in Manhattan.

Moreover, each of the corporate entities has an affiliation with Mr. Mo, the majority shareholder of Fang. Three of them (RCNC, NYMA and WSGTC) are New York non-profit corporations in which Mr. Mo (or his family) hold many if not most senior management positions; another (Best Work) is a subsidiary of Fang (which is majority controlled by Mr. Mo). Furthermore, RCNC and NYMA own large parcels of real estate in Orange and Westchester Counties, and in the case of NYMA, also operates a private boarding school.

In sum, each of the Proposed Subpoena Recipients is in a position to furnish information for use in the Cayman Proceeding, and it is appropriate that Section 1782 discovery be granted.

## FACTUAL BACKGROUND

**A.      Relevant Parties and Non Parties**

    **1.      Evenstar**

Evenstar Master Fund SPC, is an exempted segregated portfolio company incorporated under the laws of the Cayman Islands; the sole portfolio within the fund is Evenstar Master Sub-Fund I Segregated Portfolio, which was launched in 2005. Evenstar Special Situations Limited is a limited liability company also incorporated under the laws of the Cayman Islands. Headquartered in Hong Kong, Evenstar has made substantial investments in Mainland China's real estate and internet sectors. (*See* Nov. 16, 2020 Amended Petition as filed in Cayman Proceeding ¶ 18, O'Driscoll Decl. Ex. 2) (hereinafter "Cayman Amended Petition").

2. **Fang Holdings**

This Application, and the litigation in the Cayman Islands, both relate to Fang Holdings Limited ("Fang"). Formerly known as SouFun Holdings limited, Fang is a company incorporated under the laws of the Cayman Islands. Fang's principal place of business is in Beijing, Mainland China, where it purportedly operates the country's largest real estate internet listing and search portal, and provides a variety of ancillary services, including marketing, listing, lead generation, e-commerce and financial services. (*See* Cayman Am. Pet. ¶¶ 8-12.)

Fang's securities are listed on the New York Stock Exchange as American Depositary Shares ("ADS") under the ticker symbol SFUN. Due to its shares being publicly traded in the United States, Fang is required to make periodic filings with the United States Securities and Exchange Commission. (*Id.* ¶ 10.)

3. **Vincent Mo**

Fang's Chairman and CEO, and controlling shareholder, is Mr. Vincent Mo. SEC filings by Fang indicate that Mr. Mo, and/or companies owned by him or his family, controls approximately 71.7% of voting interests in Fang. (*Id.* ¶¶ 15, 33, 45.) In addition, Mr. Mo also owns and controls a group of hotel companies, apparently held through Upsky Enterprises Limited, a company incorporated in the British Virgin Islands. (*Id.* ¶¶ 104-05.) Upsky Enterprises appears to own ten portfolio hotels (seven in Mainland China, and three in the United States), and, as further detailed below, has apparently engaged in various transactions with certain of the Proposed Subpoena Recipients.

4. **The Proposed Subpoena Recipients**

Each of the Proposed Subpoena Recipients is found in this District:

***Research Center on Natural Conservation, Inc.*** ("RCNC") is a New York not-for-profit corporation registered pursuant to Section 402 of the Not for Profit Corporation Law of the State

3

of New York. (Chan Decl. Ex. 7.) RCNC is based in Harriman, New York 10926. (*Id.* at 2.) As noted below, it owns significant property in Orange and Westchester Counties, and is controlled by Mr. Mo and/or his family.

*New York Military Academy* ("NYMA") is a New York 501(c)(3) corporation chartered by the Board of Regents of the Education Department of the State of New York. (Chan Decl. Ex. 8.) Its address is 78 Academy Avenue, Cornwall-on-Hudson, New York, 12520. (Chan Decl. Ex. 9.) It operates a boarding school at that location and is controlled by Mr. Mo and/or his family. Ms. Jing Cao is the President of the Board of Trustees of NYMA.

*Wall Street Global Training Center, Inc.* ("WSGTC") is a New York section 402 not-for-profit corporation. (Chan Decl. Ex. 10.) Its address is 72 Wall Street, 11th Floor, New York, New York 10005. (*Id.*) Furthermore, as noted below, it is controlled and operated by Mr. Mo. (Chan Decl. Ex. 11.)

*Best Work Holdings (New York) LLC* ("Best Work NY") is a New York limited liability company with a business address of 72 Wall Street, New York, New York 10005. (Chan Decl. Ex. 12.) Best Work NY is a subsidiary of Fang. (Chan Decl. Ex. 13.)

*Ms. Jing Cao* is the spouse of Mr. Mo. Although she appears to be a Chinese national, she also appears to maintain a residence in Manhattan, and has recently listed an apartment at 1 Central Park West, i.e. the "Trump International" building, as her residence. (*See* Chan Decl. Ex. 14 (public record of IRS tax lien on Ms Cao, noting this apartment as her address.)[2]

---

[2] In addition, Ms. Cao also has had a residence at 112 West 56th Street, New York, New York. (Chan Decl. Ex. 15 (copy deed to premises as publicly filed).)

4

**B.      The Foreign Proceedings that are the Subject of this Application**

      **1.      Evenstar's Investment in Fang**

Evenstar is a long-term investor in Fang. It first purchased ADSs in Fang in December 2014, and currently holds a substantial parcel of Fang ADSs. (Cayman Am. Pet. ¶ 14.) As of May 2020, a portion of Evenstar's ADSs have been converted into ordinary shares in accordance with the Custodian Agreement governing the ADS. (*Id.* ¶¶ 5-7.)[3]

      **2.      The Cayman Proceeding:  Evenstar Requests that Fang Be Subject to a Just and Equitable Winding Up Order**

On November 12, 2020, Evenstar commenced the Cayman Proceeding before the Grand Court of the Cayman Islands, seeking an order that Evenstar be wound up on "just and equitable" grounds, and/or seeking further and alternative relief. (*See* O'Driscoll Decl. ¶¶ 11, 15; Cayman Am. Pet. ¶¶ 266-74.) Evenstar contends that such relief is justified, among other things, by a pattern of self-dealing in which the assets of Fang have been appropriated for the benefit of Mr. Mo (or entities owned or controlled by him, including Upsky Enterprises). (*Id.* ¶¶ 103-208.) Other serious allegations of self-dealing, undisclosed related party transactions and breach of fiduciary duty are made against Mr. Mo, as majority owner of Fang. (*Id.* ¶¶ 47-102.) The Cayman Amended Petition seeks, among other things, that a liquidator be appointed to Fang for the purposes of winding it up, and/or that other relief (such as a buyout of the minority interests) be granted. (*Id.* (Prayer for Relief).)

The Cayman Amended Petition (and related summons for directions) has been served on Fang. Evenstar's Cayman counsel is presently taking steps to effect service on Mr. Mo. (*See*

---

[3]  As described more fully in the Cayman Amended Petition, the conversion process was not straight forward, as Fang failed to honor Evenstar's conversion request, and Evenstar had no choice but to resort to the Grand Court of the Cayman Islands for an order permitting the ADSs to be converted without Fang. (Cayman Am. Pet. ¶¶ 214-15.)

O'Driscoll Decl. ¶ 12).  The case has been assigned to Chief Justice Smellie of the Cayman Grand Court, and a directions hearing is presently listed for December 4, 2020.  (*Id.* ¶¶ 10, 13.)

### 3. Allegations in the Cayman Proceeding Concerning Next Decade – and U.S. Properties

The Cayman Amended Petition identifies a number of transactions involving Next Decade, a British Virgin Islands company that, according to SEC filings, is owned or controlled by Mr. Mo through a family trust.  (*See* Cayman Am. Pet. ¶ 37.)  Ms. Cao is a director of Next Decade.  (Chan Decl. Ex. 17.)

As detailed in the Cayman Amended Petition, it is alleged that Next Decade and its affiliate Media Partner Technology Limited (another Mo family entity) entered into a December 24, 2019 "Sale and Purchase Agreement" with Fang by which Fang was empowered to purchase up to 15 million ordinary shares of CIH shares held by Next Decade/Media Partner in China Index Holdings Limited ("CIH"), another publicly-traded company that was spun off from Fang in June 2019.  (*See* Cayman Am. Pet. ¶¶ 37, 66-67.)  Fang's "option" to purchase CIH shares was apparently exercised in two tranches, one on December 27, 2019 and one on June 23, 2020.  (*See id.* ¶¶ 68, 80.)

On both occasions that Fang made these purchases, they resulted in very significant gains to Next Decade/Media Partner – approximately US$13.6 million on the first tranche, and US$25.39 on the second tranche.  (*See id.* ¶¶ 70, 82.)

Notably, the resultant gains to Mr. Mo from the first tranche were characterized by Fang as "executive expenses."  (*See id.* ¶ 70.)  Consequently, as noted in the Cayman Amended Petition, "Fang's executive compensation for 2019 increased by 1,687.5% compared to the aggregate executive compensation paid for 2018."  (Cayman Am.Pet. ¶ 74.)

Evenstar further alleges that, in the period prior to the second tranche option exercise (i.e. in mid-2020), "Fang's management engaged in market manipulation of CIH's ADS price with a

6

view to artificially inflating the market price prior to the Second Option Exercise in order to disguise the true extent of the immediate but unrealised loss to Fang." (*Id.* ¶ 84; *see also id* ¶¶ 84-90.)

As detailed in the Cayman Amended Petition, it is Fang's position that these transactions were highly improper. (*See id.* ¶¶ 71-79, 94-102.)

The Cayman Amended Petition also identifies several U.S. property acquisitions by entities controlled by or linked to Mr. Mo, which raise serious questions regarding whether they have been funded by the misappropriation of Fang assets. One example is a 2011 transaction in which Proposed Subpoena Recipient Best Work (a Fang subsidiary) acquired a former AIG Building, located at 72 Wall Street, New York, for $60.7 million. (*See* Cayman Am. Pet. ¶ 166.)[4]

In its public filings, Fang has claimed that 72 Wall Street served as Fang's global training center (and supposedly was the base of the company's "Management School"). At around the time 72 Wall Street was purchased by Fang, Mr. Mo formed WSGTC, a New York non-profit company, allegedly in order to conduct training for Fang employees at that location. (*See* Cayman Am. Pet. ¶ 169; *see also* Chan Decl. Ex. 10 (certificate of formation of WSGTC).) Mr. Mo is President of WSGTC. (*See* Chan Decl. Ex. 11 (IRS Form 990 filed by WSGTC).) As noted in the Cayman Amended Petition, between 2011 and 2013, Best Work paid $2.4 million to WSGTC, purportedly in training fees. (Cayman Am. Pet. ¶ 176.).

The Cayman Amended Petition alleges, however, that there are reasons to believe that no training occurred at 72 Wall Street during this time period. (*Id.*) And recently, under Best Work's management, 72 Wall Street has been under renovations for use as a hotel. (*Id.* ¶ 174.) Mr. Mo's

---

[4] Another Fang subsidiary has purchased "office space" in San Jose, California, but has failed to put that property to productive use. (Cayman Am. Pet. ¶¶ 239-41.) This is to be the subject of a separate Section 1782 application in the United States District Court for the Northern District of California.

company, Upsky Enterprises, appears to be linked to the hotel project.  (*Id.* ¶ 180.)  As the Cayman Amended Petition notes, Fang's business does not involve operating hotels, and so the deployment of Fang's capital in making such a large purchase appears to be irregular.  (*Id.* ¶ 12.)

The Cayman Amended Petition also notes several instances where the assets of Fang were co-mingled with those of Upsky Enterprises, and/or other companies with Mr. Mo.  (*See id.* ¶¶ Am. Cayman Pet. ¶¶ 136-41 (describing purchase of Shanghai properties by Fang that appear to be used by Upsky); *see id.* ¶¶ 131-13 (alleging that two hotel properties owned by Fang, Youtx Huizhou and Youtx Sky, are apparently managed by Upsky, even though no management contract, or payments thereunder, have been disclosed to shareholders).  The Cayman Amended Petition identifies numerous other transactions involving Fang or Mo-linked entities, including Upsky, that, in the circumstances, require examination, including:

- RCNC's $6 million purchase in 2011 of Arden House, a large mansion in Harriman, New York.  RCNC, like WSGTC, is a non-profit corporation headed by Mr. Mo.  (*See id.* ¶¶ 182-85.)  RCNC has stated that it has entered into large mortgage loans with "Upsky."  (*See id.* ¶ 190)  At the same time, in running Arden House, RCNC has utilized Fang personnel, email addresses and website resources (*see id.* ¶¶ 190-91); moreover, Mr. Mo and members of his family have made personal use of Arden House.  (*See id.* ¶ 188.)  These concerns are compounded by RCNC's apparent financial links with Upsky.  This warrants further inquiry into the source of RCNC's capital and to examine the extent to which it has drawn upon Fang resources.  (*See id.* ¶ 190.)

- RCNC's $15.3 million purchase in 2015 of NYMA, a boarding school in Cornwall-upon-Hudson, New York.  (*See id.* ¶¶ 192-93.)  Since this acquisition, Mr. Mo and his wife, Ms. Jing Cao, have become trustees of NYMA; indeed, Ms. Cao is President.  (*See id.* ¶ 194.) NYMA has received loans from both Upsky and Mr. Mo, including a mortgage loan from Upsky.  (*See id.* ¶¶ 196-98.)

- RCNC's $17.35 million purchase in 2017 of Briarcliff College, a vacant campus (and former girls' school) in Westchester County.  (*See id.* ¶ 195.)

- Upsky's purchase of three hotels in the United States (two in California and one on Long Island).  As noted in the Cayman Amended Petition, Upsky has disclosed that it operates seven (7) hotels in China and three (3) in the United States, although it appears to be using

       other Fang properties as well (even though these have not been disclosed).  (*See id.* ¶¶ 204-08.)[5]

•      The $58 million purchase in 2017 by a Fang affiliate, Best Fang Holdings LLC, of purported "office" premises in San Jose, California, that appear to have gone unused, and serve no apparent business rationale.  (*See id.* ¶¶ 239-41.)

As further noted below, certain of these above transactions are the subject of the discovery that Evenstar currently seeks.

## ARGUMENT

## I.
## LEGAL FRAMEWORK

**A.**    **Section 1782 Standards**

28 U.S.C. § 1782 authorizes United States District Courts to grant discovery for use in a pending or reasonably contemplated foreign proceeding.  *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 259 (2004).  The statute states, in relevant part:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or thing for use in a proceeding in a foreign or international tribunal. . . . The order may be made . . . upon the application of any interested person.

28 U.S.C. § 1782(a).

Accordingly, a Section 1782 application must satisfy three statutory requirements: "(1) the person from whom discovery is sought resides (or is found) in the district of the district court to which the application is made, (2) the discovery is for use in a foreign proceeding before a foreign tribunal, and (3) the application is made by a foreign or international tribunal or any interested person."  *Brandi-Dohrn v. IKB Deutsche Industriebank AG*, 673 F.3d 76, 80 (2d Cir. 2012).

---

[5]    These transactions are to be the subject of separate Section 1782 applications in the United States District Courts for the Northern District of California and the Eastern District of New York.

9

Once the statutory requirements are satisfied, courts may then consider certain discretionary factors in deciding whether to grant a Section 1782 application, including: (1) whether the discovery is sought from a participant in the foreign proceeding who is accessible absent Section 1782 aid; (2) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the tribunal to U.S. federal court assistance; (3) whether the discovery request conceals an attempt to circumvent foreign proof-gathering restrictions or policies of a foreign country or the United States; and (4) whether the discovery requests are unduly intrusive or burdensome. *Id*. at 80-81 (citing *Intel*, 542 U.S. at 264-65).

Both the Supreme Court and the Second Circuit have acknowledged that Congress intended Section 1782 to be a liberal avenue for discovery in aid of foreign and international proceedings. *See, e.g., Intel,* 542 U.S. at 247-48; *Brandi-Dohrn,* 673 F.3d at 80 ("[T]he statute has, over the years, been given 'increasingly broad applicability.'") *In re Edelman*, 295 F.3d 171, 180 (2d Cir. 2002) ("In sum, Congress has expressed as its aim that the statute be interpreted broadly. . . .").

Here, Evenstar satisfies the three statutory requirements of Section 1782; moreover, the discretionary factors favor taking discovery from each of the Proposed Subpoena Recipients.

**B.**     **The Power of the Court to Proceed *Ex Parte***

Section 1782 applications are routinely granted *ex parte*. Granting this Application on an *ex parte* basis will not impinge upon the Proposed Subpoena Recipients' due process rights, as they may subsequently move to quash the subpoenas and/or vacate the order granting the Application. *See Gushlak v. Gushlak*, 486 F. App'x. 215, 217 (2d. Cir. 2012) ("[I]t is neither uncommon nor improper for district courts to grant applications made pursuant to § 1782 *ex parte*. The respondent's due process rights are not violated because he can later challenge any discovery request by moving to quash pursuant to Federal Rule of Civil Procedure 45(c)(3)") (granting Section 1782 application for use in proceedings in the Cayman Islands)).

10

## II.
## THE APPLICATION MEETS SECTION 1782'S STATUTORY REQUIREMENTS

### A. The Proposed Subpoena Recipients are "Found" Within This District

Only one of the Proposed Subpoena Recipients, Ms. Cao, is an individual. Although she appears to be a Chinese national, she appears also to maintain a current residence in Manhattan (*see supra* p. 4). As such, she is found in this District. *See, e.g., In re Technostroyexport*, 853 F. Supp. 695, 699 (S.D.N.Y. 1994) (granting Section 1782 application against a New York corporation and its director and sole shareholder who maintain residences and offices in New York).

Four of the Proposed Subpoena Recipients are New York corporations. In this regard a corporation is "found" in the District where it is "essentially at home." *In re Fornaciari*, No. 17MC521, 2018 WL 679884, at *2 (S.D.N.Y. Jan. 29, 2018) (citation omitted). In determining where a corporation is "essentially at home," courts will look to a corporation's principal place of business. *Id.* (citation omitted); *see also Austl. & N.Z. Banking Grp. Ltd. v. APR Energy Holding Ltd.*, No. 17-MC00216 (VEC), 2017 WL 3841874, at *3 (S.D.N.Y. Sept. 1, 2017) ("[A] corporation is 'at home' for the purpose of constitutional due process only in a state that is the corporation's place of incorporation or its principal place of business." (quoting *Daimler* 761 & n.19)).

In addition, courts in this District have typically held that an entity is found in this District if it has a systematic and continuous presence here. *See In re Kleimar N.V.*, 220 F. Supp. 3d 517, 521 (S.D.N.Y. 2016) (defendant who had conducted "systematic and regular business" in New York was "found" in that District).

Each of the corporate Proposed Subpoena Recipients satisfy the first statutory requirement of Section 1782 because they are both headquartered and do business in this District:

11

- RCNC is headquartered at Arden House, 1 Arden Road, Harriman, New York 10926, which is located within Orange County. (Chan Decl. Ex. 16); *see also* Ex. 7 (RCNC's Amended Certificate of Incorporation, stating that its address for the service of process is P.O. Box 51, Harriman New York, 10926).) Harriman is in Orange County, New York, *i.e.*, within this District.

- NYMA is headquartered at 78 Academy Avenue, Cornwall-on-Hudson, New York 12520, the site of the school. (Chan Decl. Ex. 9.) Cornwall-on-Hudson also is in Orange County.

- WSGTC is headquartered at 72 Wall Street, 11th Floor, New York, New York 10005 (Chan Decl. Ex. 11), in New York County, *i.e.*, within this District.

- Best Work NY's business address also is 72 Wall Street, New York, New York 10005 (Chan Decl. Ex. 12.)

**B.**     **The Discovery Sought is For "Use" in a Foreign Proceeding**

There is no question that the Cayman Proceeding is a foreign proceeding for purposes of Section 1782. *See Nat'l Broad Co. v. Bear Stearns & Co.*, 165 F. 3d 184 (2d Cir. 1999) (defining "proceeding[s] in a foreign or international tribunal" as including adjudicative proceedings before foreign courts); *see also In re Application for an Order Pursuant to 28 U.S.C. § 1782*, 773 F. 3d 456, 460-61 (2d Cir. 2014).

In order to establish that the information sought is for "use" in a foreign proceeding, an applicant need only show that they have "the procedural right to submit the requested documents to" a foreign tribunal. *In re Accent Delight Int'l Ltd.*, 869 F. 3d 121, 132 (2d Cir. 2017). An applicant is not required to prove that the information would be discoverable or even admissible in the foreign proceeding. *Brandi-Dohrn*, 673 F.3d at 82 ("[A]s a district court should not consider the *discoverability* of the evidence in the foreign proceeding, it should not consider the *admissibility* of evidence in the foreign proceeding in ruling on a Section 1782 application.")

Having commenced the Cayman Proceeding against Fang, Evenstar undeniably satisfies the "use" requirement in Section 1782. Evenstar bears the burden of proof in the Cayman

Proceeding, and Cayman courts are receptive, in principle to receiving documentary and other evidence obtained in aid of domestic Cayman Proceeding. (O'Driscoll Decl. ¶ 27.)

Moreover the Proposed Subpoena Recipients appear to possess relevant information which is material to the Cayman Proceeding. Each of the Proposed Subpoena Recipients was involved in transactions identified in the Cayman Amended Petition. Ms. Cao is a board member of Next Decade as well as an officer of RCNC and NYMA. Of the corporate entities, three of them (RCNC, NYMA and WSGST) are non-profit companies on which Mo family members serve as an officer; the other (Best Work NY) is a subsidiary of Fang. (*See supra* at 4.) The Proposed Subpoenas seek documents and testimony that is pertinent to the issues in the Cayman Proceeding.

C. **The Evenstar Entities are "Interested Persons"**

Lastly, Section 1782 requires an applicant to show that it possesses a reasonable interest in the foreign proceeding. Here, there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s]' who may invoke § 1782." *Intel*, 542 U.S. at 256 (second alteration in original). Both Evenstar entities are petitioners in the Cayman Proceeding, and thus each qualifies as an "interested person" pursuant to Section 1782.

## III.
## THE SECTION 1782 DISCRETIONARY FACTORS WEIGH IN FAVOR OF PERMITTING THE PROPOSED DISCOVERY

Once an applicant has satisfied the statutory requirements of Section 1782, courts then turn to whether the four discretionary *Intel* factors have been met. *See Brandi-Dohrn*, 673 F.3d at 80-81.

For each Proposed Subpoena Recipient, the proposed discovery consists of document production subpoenas, as well as deposition subpoenas, each seeking discovery pursuant to the Federal Rules of Civil Procedure (as permitted by Section 1782). The document production

subpoenas seek information pertaining to the issues raised in the Cayman Amended Petition, including:

- the source of funds for the RCNC/NYMA transactions and the relationship of these entities with other companies controlled by Mr. Mo, including both Fang and the "Upsky" companies;

- the purported and actual use of 72 Wall Street, the activities of the Fang "Management School," the fees paid to WSGT, and the apparent renovation of the property as a hotel, including any arrangements with Upsky; and

- in the case of Ms. Cao, the other issues raised in the Cayman Amended Petition, to the extent that they involve companies and entities controlled by her or her family, including Next Decade.

Each of the discretionary factors warrant the issue of these subpoenas. First, none of the Proposed Subpoena Recipients are party to the Cayman Proceeding. *Cf. Intel* 542 U.S. at 264. Ms. Cao is not a party. Three of the corporate entities (RCNC, NYMA and WSGST) are non-profit entities alleged to be under the control of Mr. Mo, but they are not parties to the Cayman Proceedings. Accordingly, in the absence of relief pursuant to Section 1782, third-party discovery from each of these persons/entities may not be available to Evenstar in the Cayman action.

One Proposed Subpoena Recipient (Best Work NY) is a subsidiary of Fang, which is the subject of the Cayman Proceeding, but it is unclear whether Fang itself will appear in the proceedings, what role it will play, and whether it will undertake to produce information in the hands of Best Work NY. Thus, it is appropriate to seek information from Best Work NY through Section 1782.

The second *Intel* factor is whether a foreign tribunal would be receptive to evidence obtained pursuant to a 1782 application. *See In re Application of OOO Promnestroy*, No. M-19-99(RJS), 2009 WL 3335608, at *7 (S.D.N.Y. Oct. 15, 2009) (characterizing this requirement as whether a foreign tribunal would "reject evidence obtained with the aid of Section 1782" (emphasis

14

omitted)). Courts within this circuit have held that there is a strong presumption that foreign tribunals will be receptive to evidence obtained in the United States. *See In re Euromepa, S.A.*, 51 F. 3d 1095, 1100 (2d Cir. 1995). Moreover courts should only deny a 1782 application if there is "*authoritative proof* that [the] foreign tribunal would reject evidence obtained with the aid of section 1782." *Id*. at 1100 (emphasis added). That presumption is satisfied here and is buttressed by the accompanying declaration from Evenstar's Cayman counsel explaining that, in a just and equitable winding up proceeding, the court has discretion to admit documents obtained through 1782 action, and to evaluate, and potentially admit testimony received through Section 1782. (O'Driscoll Decl. ¶ 27.)

The third *Intel* factor is "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States." *Intel*, 542 U.S. at 265. The discovery sought by Evenstar does not attempt to evade any proof-gathering restrictions, nor do they violate public policy. Evenstar's requests do not seek proprietary information, state secrets or attorney-client communications. If any of the Proposed Subpoena Recipients were to reasonably believe that individual document requests raise such concerns, Evenstar is willing to consider accommodating such concerns, such as stipulating to a protective order. *See, e.g., In re Minatec Fin. S.À.*, No. 1:08-cv-00269, 2008 WL 3884374, at *9 (N.D.N.Y. Aug. 18, 2008) ("[T]he beauty of § 1782 is that it permits this Court to impose a protective order that would extinguish any concern that privileged, confidential, or proprietary information would be indecorously revealed").

The last *Intel* factor asks whether the discovery requests are "unduly intrusive or burdensome." *Intel,* 542 U.S. at 265. This standard is identical to the standard under U.S. domestic civil litigation under the Federal Rules of Civil Procedure. *In re Bayer AG*, 146 F.3d 188, 195 (3d

Cir. 1998).  Each of Evenstar's requests are narrowly tailored and directly relevant to issues raised in the Cayman Proceeding.  Accordingly, whatever burden is imposed upon the Proposed Subpoena Recipients is reasonable and proportionate given the circumstances.

The Cayman Proceeding raises serious allegations of corporate malfeasance, and misappropriation of Fang's corporate funds to the benefit of Mr. Mo, his family, and entities controlled by him.  Accordingly, relative to the focused requests and information sought by Evenstar, the information sought from the Proposed Subpoena Recipients is potentially important.

## CONCLUSION

For the foregoing reasons, Evenstar respectfully asks this Court to (a) grant the Application for an Order to Conduct Discovery; (b) enter the Proposed Order attached to the Chan Declaration as Exhibit 1; and (c) authorize Evenstar, pursuant to 28 U.S.C. § 1782, to issue and serve the Subpoenas attached to the Chan Declarations as Exhibits 2 through 6.

Dated: New York, New York
       November 18, 2020

                                            SKADDEN, ARPS, SLATE,
                                               MEAGHER & FLOM LLP

                                          */s/ Timothy G. Nelson*

                                          Timothy G. Nelson
                                          Eva Y. Chan
                                          One Manhattan West
                                          New York, New York, 10001
                                          Tel:  (212) 735-3000
                                          Fax:  (212) 735-2000