UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------x
In re Application of
EVENSTAR MASTER FUND SPC for
and on behalf of EVENSTAR MASTER
SUB-FUND I SEGREGATED
PORTFOLIO and EVENSTAR SPECIAL        ORDER
SITUATIONS LIMITED
                                      No. 20-MC-418 (CS) (JCM)
For an Order to Take Discovery Pursuant
to 28 U.S.C. § 1782 for Use in a Foreign
Proceeding.
------------------------------------------------------x

Appearances:

Timothy G. Nelson
Amanda Raymond Kalantirsky
Elise S. Faust
Skadden, Arps, Slate, Meagher & Flom LLP
New York, New York
*Counsel for Applicants*

B. Andrew Bednark
Andrew Churchill
O'Melveny & Myers LLP
New York, New York

William K. Pao
O'Melveny & Myers LLP
Los Angeles, California
*Counsel for Respondents*

Seibel, J.

      Before the Court are the objections of Research Center on Natural Conservation Inc., New York Military Academy, and Wall Street Global Training Center, Inc., (collectively, "Repsondents"), (ECF No. 55), to Magistrate Judge Judith C. McCarthy's August 27, 2021 Opinion and Order, (ECF No. 50 (the "Order")), granting Applicants' motion to compel compliance with document and deposition subpoenas issued to them pursuant to 28 U.S.C. §

1782 and denying Respondents' motion to quash the deposition subpoenas. Familiarity with the factual background, the proceedings before the Magistrate Judge, the Order and the law governing § 1782 is presumed.

I.     **LEGAL STANDARD**

Respondents object pursuant to Federal Rule of Civil Procedure 72(a), (ECF No. 55 at 1), which provides that a district court must "modify or set aside any part of [a magistrate judge's] order [on a nondispositive matter] that is clearly erroneous or is contrary to law," Fed. R. Civ. P. 72(a); *accord* 28 U.S.C. § 636(b)(1)(A). The parties agree that rulings on § 1782 applications are such nondispositive matters. (ECF No. 55 at 9; ECF No. 59 at 13.) *See In re Hulley Enters. Ltd.*, 400 F. Supp. 3d 62, 71-72 (S.D.N.Y. 2019) (collecting cases). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). A ruling is "contrary to law" if the magistrate judge "failed to apply or misapplied relevant statutes, case law or rules of procedure." *Garcia v. Benjamin Grp. Enter. Inc.*, 800 F. Supp. 2d 399, 403 (E.D.N.Y. 2011) (cleaned up). "It is well-settled that a magistrate judge's resolution of a nondispositive matter should be afforded substantial deference and may be overturned only if found to have been an abuse of discretion." *McAllan v. Von Essen*, 517 F. Supp. 2d 672, 678 (S.D.N.Y. 2007) (cleaned up). "A party seeking to overturn a magistrate judge's decision thus carries a heavy burden." *In re Hulley Enters.*, 400 F. Supp. 3d at 70 (cleaned up).

## II.	DISCUSSION

### A.	Documents Sought "For Use" in Foreign Proceedings

#### 1.	Waiver

Respondents first argue that the discovery Applicants seek is not "for use" in the pending Cayman Islands winding-up proceedings, as required under § 1782, because Applicants "purposefully chose to forgo discovery in that action to obtain a strategic advantage." (ECF No. 55 at 10.) Specifically, Respondents argue that Applicants' litigation strategy has been to delay discovery in favor of seeking expedited relief. (*Id.* at 11.) Applicants correctly argue, (ECF No. 59 at 14-15), that this argument was not raised before the Magistrate Judge and is therefore waived.[1] *See Grand River Enters. Six Nations, Ltd. v. King*, No. 02-CV-5068, 2009 WL 1360686, at *3 (S.D.N.Y. May 15, 2009) (party's failure to "present timely arguments, case law, or evidentiary materials" to magistrate judge deprives magistrate judge of "opportunity to rectify any alleged errors" and waives party's right to present those arguments or materials to district court on appeal from the magistrate judge's nondispositive order) (cleaned up); *Robinson v. Keane*, No. 92-CV-6090, 1999 WL 459811, at *4 (S.D.N.Y. June 29, 1999) (issues not raised before and therefore not addressed by magistrate judge may not properly be deemed "objections" to magistrate judge's ruling); *Abu-Nassar v. Elders Futures, Inc.*, No. 88-CV-7906, 1994 WL 445638, at *5 n.2 (S.D.N.Y. Aug. 17, 1994) (if district court were to consider untimely

---

[1] Respondents argued before the Magistrate Judge that the subpoenaed materials were not "for use" in the Cayman Islands litgation because they were not relevant (an argument they do not raise before me). They did not argue that the "for use" requirement was not met because Applicants had chosen to forgo discovery in the foreign action.

3

contentions, it would unduly undermine authority of magistrate judge by allowing litigants the option of waiting to advance additional arguments after report issued).

### 2. Merits

In any event, the argument fails. Section 1782 allows a district court to order a person or entity to provide testimony or documents "for use in a proceeding in a foreign or international tribunal." As the Magistrate Judge noted, (Order at 14), an applicant satisfies the "for use" requirement if the discovery it seeks is "something that will be employed with some advantage or serve some use in the [foreign] proceeding." *Mees v. Buiter*, 793 F.3d 291, 298 (2d Cir. 2015). "Section 1782 applicants need only '*identify* some "discernible procedural mechanism" for introducing the evidence'" – in other words, a way of "actually using" the evidence sought. *In re Noguer*, No. 18-MC-498, 2019 WL 1034190, at *3 (S.D.N.Y. Mar. 5, 2019) (emphasis in original) (quoting *Certain Funds, Accts. &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 122 n.11 (2d Cir. 2015)).

Respondents argue that there is no such mechanism in the Cayman Islands litigation because Applicants have been forgoing discovery, instead seeking expedited interim relief, and therefore Applicants have not shown the materials they seek "are to be used at some stage of a foreign proceeding that was within reasonable contemplation at the time" the subpoenas were sought. *Mees*, 793 F.3d at 301. This not follow as a logical matter. Assuming for the sake of argument that Applicants are indeed planning to seek no discovery in the Cayman Islands case and to instead proceed right to the merits, that would not make the materials they seek useless or mean there was no way to introduce them. Ultimately there will be submissions to the Cayman Islands court that can refer to the sought-after information, and/or a hearing at which that

4

information could be used – whether in connection with the application for a provisional liquidation order or at trial on the merits seeking final relief.  Indeed, the Summons for Directions filed by Applicants (before they were directed by the Cayman Islands judge to seek provisional relief) contemplated a hearing at which direct testimony would be taken by affidavit but live cross-examination could be sought.  (ECF No. 3-3 at 2.)  Applicants' Cayman Island counsel averred, without contradiction, that the information obtained via the subpoenas can be received and evaluated by the Cayman Islands court.  (ECF No. 3 ¶ 27.)  Applicants plainly reasonably contemplated the use of the subpoenaed information, whether or not additional discovery is ordered by the foreign court, and that information will serve a purpose in the winding-up litigation.

Further, it is far from clear that Applicants plan to forgo discovery.  The Summons for Directions sought a ruling that, despite Fang Holdings, Limited ("Fang") being named as a Respondent, the dispute was between Applicants and Vincent Mo, and thus that Fang should participate only for limited purposes, "including the making of discovery."  (ECF No. 3-3 at 1.)  Further, Applicants' counsel requested that a directions hearing, at which discovery (among other things) would be discussed,[2] be held right after the hearing on the provisional liquidation order.

---

[2] The Cayman Islands Companies Winding Up Rules ("CWR") provide, among other things, that "[u]pon hearing the summons for directions, the Court shall give such directions as it thinks appropriate in respect of the followings [*sic*] matters –
. . . .

    (g) the manner in which evidence is to be given;
    (h) if evidence is directed to be given by affidavit, directions relating to cross-examination of the deponents;
    (i) discovery and inspection of documents;
    (j) oral discovery; and
    (k) such other procedural matters as the Court thinks fit.

(ECF No. 28 ¶ 14; ECF No. 35 ¶ 13.) Even Mo's counsel, in a declaration submitted by Respondents, explained that the Cayman Islands court would not give directions regarding discovery until the provisional liquidation application is resolved, and that such directions would include the opportunity to seek documents and deposition testimony. (ECF No. 35 ¶ 19.) That discovery has not yet been sought or ordered thus does not suggest that Applicants have chosen to forgo it. And, of course, there is no requirement that discovery in the foreign tribunal be under way or sure to occur; Applicants must show only that they reasonably contemplate being able to inject the requested information into the foreign proceedings. *See In re Accent Delight Int'l Ltd.*, 869 F.3d 121, 132 (2d Cir. 2017); *Mees*, 793 F.3d at 301.

Respondents further argue that Applicants are seeking discovery in this court but not in the Cayman Islands as a way to insulate themselves from reciprocal discovery. As noted above, that does not appear to be the case. In any event, Mo or Fang can always ask the Cayman Islands court for reciprocal discovery from Applicants. Respondents present no reason why, if that court thought Applicants were playing games, it could not order discovery from Applicants even if Applicants had not requested discovery from Mo or Fang. Indeed, CWR Order 3, Rule 12 requires the court to issue those rulings regarding discovery that it deems appropriate, and Mo's counsel acknowledged that the Court would likely give direction in that regard. (ECF No. 35 ¶¶ 7-9, 19.)

For these reasons, I decline to disturb Magistrate Judge McCarthy's finding that Applicants have shown that the requested discovery was "for use" in the Cayman Islands litigation.

---

CWR Order 3, Rule 12. (ECF No. 35-2; *see* ECF No. 35 ¶¶ 7-9.)

B. *Intel* **Factors**

If the statutory requirements of § 1782 are met, the court may grant the requested discovery in its discretion. *Mees*, 793 F.3d at 297. That discretion is to be exercised "in light of the twin aims of the statute: providing efficient means of assistance to participants in international litigation in our federal courts and encouraging foreign countries by example to provide similar means of assistance to our courts." *Schmitz v. Bernstein Liebhard & Lifshitz, LLP.*, 376 F.3d 79, 84 (2d Cir. 2004) (cleaned up). The Supreme Court has identified four factors that bear on this determination:

> (1) whether "the person from whom discovery is sought is a participant in the foreign proceeding," in which event "the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad";
> (2) "the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance";
> (3) "whether the § 1782(a) request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States"; and
> (4) whether the request is "unduly intrusive or burdensome."

*Kiobel by Samkalden v. Cravath, Swaine & Moore LLP*, 895 F.3d 238, 244 (2d Cir. 2018) (quoting *Intel Corp. v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 264-65 (2004)).

Respondents contend that Judge McCarthy misapplied the first factor, because Applicants are really seeking discovery from their adversary in the Cayman Islands proceeding – Mo – and that because the court there could order the same discovery, there is no need for disclosure under § 1782. They contend that she "did not address whether the Cayman court could order the same discovery from Mo," (ECF No. 55 at 15), and "did not . . . consider the effect under the first *Intel* factor of Mo's control over the [Respondents] and, by extension, their discovery," (*id.* at 16). To

7

the contrary, Judge McCarthy acknowledged and discussed both of those issues. (*See, e.g.,* Order at 19-20, 22-23, 24.) She explained that the first *Intel* factor, when present, reduces the need for a § 1782 order because the foreign court has jurisdiction over the parties before it and can order them to produce the evidence. (*See* Order at 20 (citing *Intel*, 542 U.S. at 264).) She went on to note that that reasoning could apply even where, as here, the subpoenaed party in the district court is not technically the opposing party in the foreign litigation, if the subpoenaed party is the adversary in the foreign litigation "'for all intents and purposes.'" (*Id.* (quoting *Schmitz*, 376 F.3d at 85).) She simply concluded, with ample record basis, that Respondents are not Applicants' adversaries in the Cayman Islands litigation "for all intents and purposes."

Judge McCarthy observed that Respondents are separate entities from Mo – Applicants' adversary in the Cayman Islands proceeding – and are outside the jurisdiction of the Cayman Islands court. (Order at 22.) She also noted that Respondents are not named parties in the Cayman Islands litigation, and do not appear to otherwise be participants in that case, despite Mo being a director, officer or trustee of all three and allegedly controlling the responsive documents. (*Id.*) Because of these distinctions, she reasoned, this was not a situation like *Kiobel*, where a U.S.-based law firm possessed documents the applicant wanted for use in foreign litigation against the law firm's client. (*Id.* at 20-21, 22.) There, the client was the "real party" from whom the applicant sought the documents, and the applicant sought them from the law firm just as a "work around," but here Respondents are the "real parties," because the subpoenas seek information regarding Respondents' own business activities in this jurisdiction. (*Id.* at 22-23.)

These findings are consistent with the law of this Circuit. While "a petitioner may not use section 1782 to require an affiliate or related third party to obtain documents from its

8

opponent in the foreign litigation," *In re Application of CBRE Glob. Invs. (NL) B.V.*, No. 20-MC-315, 2021 WL 2894721, at *9 (S.D.N.Y. July 9, 2021), this rule is no bar to production where the subpoenaed party and the litigation opponent are "separate legal entities," *In re Top Matrix Holdings Ltd.*, No. 18-MC-465, 2020 WL 248716, at *5 (S.D.N.Y. Jan. 16, 2020).

> [T]he information [Applicants] seek[] from [Respondents] . . . is not information that [Respondents] would have solely by virtue of [their] relationship to the real party to the foreign proceedings [Mo] and is pertinent only to the party to the foreign proceeding. Instead, the information sought is directly relevant to [Respondents]. As such, the first *Intel* factor weighs in [Applicants'] favor.

*In re Application of CBRE*, 2021 WL 2894721, at *10 (cleaned up). It is "of little to no consequence" that the information sought from Respondents might also be in Mo's possession, *id.*, "nor is it surprising that [some of] the information [Applicants] seek[] implicates [Mo or Fang], inasmuch as the whole purpose of the discovery request is to obtain documents and information for use in foreign litigation against those two entities," *id.*

In short, Judge McCarthy correctly evaluated the subpoenas as seeking information from U.S.-based Respondents about Respondents' U.S.-based activities, for use in Applicants' foreign litigation against Mo, not as an end-run to obtain documents solely pertaining to Mo. Applicants are not trying to obtain Mo's documents from Respondents; they are trying to obtain Respondents' documents from Respondents.

Respondents further argue, in passing, that Judge McCarthy misapplied the fourth *Intel* factor, in that it would be unduly burdensome to require Respondents to produce the requested information when the same information would be available from Mo, (ECF No. 55 at 18-19), particularly in light of Mo's representation that he would produce the discovery if the Cayman Islands court so orders, (*id.* at 17). Applicants point out that Mo's counsel backtracked from that

promise at oral argument, saying that any such pledge was subject to China's data security laws and disclosure would therefore require the approval of the Chinese government. (ECF No. 59 at 20.) That (and Applicants' other challenges to Mo's trustworthiness) aside, that Mo as an individual and Respondents as corporations might have to produce the same information is a function of the choice to do business in the corporate form. *See Omega Consulting v. Farrington Mfg. Co.*, 604 F. Supp. 2d 684, 685 (S.D.N.Y. 2009) ("If a party wishes to take advantage of the benefits of the corporate form, he or she must also assume its concomitant burdens."). As Judge McCarthy noted, (Order at 27-28, 30), litigants are entitled to obtain discovery from a corporation in a form that is binding on the corporation, even if an individual may possess the same information. *See Dongguk Univ. v. Yale Univ.*, 270 F.R.D. 70, 74 (D. Conn. 2010) ("A party may also have an interest in getting the corporation's testimony on an issue, rather than the testimony of an individual. In such a case, courts have allowed 30(b)(6) depositions in order to obtain testimony binding on the corporation even though that testimony was likely to essentially duplicate information which had already been stated in an individual deposition."); *cf. Top Matrix*, 2020 WL 248716, at *5 ("court is not prohibited from compelling discovery of information in possession of both a parent company and its subsidiary"). That Mo may – through his own holdings or those of other corporations or family members – control the Respondent corporations does not make his statements or actions those of the corporations. Judge McCarthy carefully considered the burden and intrusiveness of both the document and deposition

subpoenas against their relevance, breadth and necessity, (Order at 26-31),[3] and did not abuse her discretion in doing so.

## Conclusion

Accordingly, Judge McCarthy's ruling was neither clearly erroneous nor contrary to law, and it is hereby AFFIRMED.[4]

SO ORDERED.

Dated: November 23, 2021
White Plains, New York

_____
CATHY SEIBEL, U.S.D.J.

---

[3] For example, she directed that the parties meet and confer on a method to avoid duplicative productions from two of the Respondents regarding transactions between them, and accepted one Respondent's representation that it could not find a certain contract despite a good-faith effort to do so. (Order at 27.) She also noted that depositions would be "especially crucial in light of the fact that Respondents' recordkeeping appears to be scant and they have been unable to locate key documents." (Order at 30 n.8.)

[4] Respondents contend that I should condition the requested discovery on: 1) Applicants requesting, and the Cayman Islands court ordering, a mutual discovery schedule; and 2) Mo's failure to produce the discovery Applicants seek from Respondents here. (ECF No. 55 at 4, 19.) But "requiring an interested person first to seek discovery from the foreign or international tribunal is at odds with the twin purposes of 28 U.S.C. § 1782." *In re Malev Hungarian Airlines*, 964 F.2d 97, 100 (2d Cir. 1992). Further, as noted earlier, the first condition is unnecessary because the Cayman Islands court can order mutual discovery if it believes the instant litigation gives Applicants an unfair advantage or otherwise finds it appropriate, and the second is unavailing because production by Mo – even assuming it will be prompt and complete – is not the equivalent of production by the Respondent corporations.